# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JERMAINE A. KEYS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case no. 4:17cv01374 PLC |
| | ) | |
| DAVID VANDERGRIFF,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Petitioner Jermaine A. Keys seeks federal habeas corpus relief from Missouri state court judgments entered after guilty pleas. See 28 U.S.C. § 2254. Respondent David Vandergriff filed a response to the amended petition,[2] along with exhibits consisting of copies of the materials from the underlying state court proceedings. After careful consideration, the Court denies the amended petition on its merits.[3]

## I. Background

---

[1] The Court substitutes as the Respondent David Vandergriff, the present Warden of the Eastern Reception Diagnostic and Correctional Center ("ERDCC") where Petitioner is incarcerated, in lieu of the person who was the Warden of the ERDCC and named as a Respondent at the time Petitioner filed this habeas proceeding. Fed. R. Civ. P. 25(d).

Additionally, Petitioner mentioned the Attorney General of the State of Missouri as a possible Respondent in the caption of his amended petition [ECF No. 7]. Petitioner challenges a judgment that imposes only concurrent sentences. Therefore, the Attorney General of the State of Missouri is not a proper Respondent. See, e.g., Rule 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts.

[2] Petitioner submitted an unsigned petition as his original petition [ECF No. 1]. The Court returned that petition to Petitioner and directed him to sign and return it [ECF No. 6]. When Petitioner filed the signed petition, it was docketed as an amended petition [ECF No. 7]. The original unsigned petition is not now before the Court for resolution.

[3] The parties consented to the exercise of authority by a United States Magistrate Judge pursuant to 28 U.S.C. Section 636(c).

In May 2011 Petitioner engaged in conduct resulting in the State of Missouri filing criminal charges against him in three cases:  one in the City of St. Louis, State v. Keys, Case No. 1122-CR02610 (filed May 17, 2011) ("the 2610 case"), and two in St. Louis County, State v. Keys, Case No. 12SL-CR00379 (filed Jan. 17, 2012) ("the 379 case"), and State v. Keys, Case No. 12SL-CR01541 (filed Feb. 8, 2012) ("the 1541 case").[4]  As reflected on the docket sheet for the 2610 case,  the State charged Petitioner with two counts of first-degree assault or attempted assault of a law enforcement officer in violation of Missouri Revised Statutes Section 565.081 (Counts 1 and 3) and two related counts of armed criminal action in violation of Missouri Revised Statutes Section 565.081 (Counts 2 and 4) for conduct occurring on May 17, 2011.  Petitioner was detained at the City of St. Louis Justice Center until he was transferred to the Missouri Department of Corrections ("MoDOC") after his sentencing on October 3, 2013.  See, e.g., entries on docket sheets for State v. Keys, Nos. 1122-CR02610 (City of St. Louis Cir. Ct. filed May 17, 2011) and 1122-CR02610-01 (City of St. Louis Cir. Ct. filed June 16, 2011 (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Mar. 26, 2021)).

In this habeas proceeding, Petitioner does not challenge the 2013 conviction and judgment in the City case (the 2610 case).  Instead, Petitioner challenges the March 2015 convictions and judgments in the two County cases (the 379 case and the 1541 case).  In the 379 case, the State

---

[4]  With respect to Petitioner's May 2011 conduct, the record in this habeas proceeding includes copies of various materials (including docket sheets) from the County cases (the 379 and 1541 cases), but no materials from the City case (the 2610 case), although the latter case is mentioned in the two County cases and, in part, is relevant to the issue presented for resolution by this Court in this case.  Courts may take judicial notice of judicial opinions and public records. Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005).  In Missouri, "court records are public records." Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).  Under the circumstances and for purposes of resolving this habeas proceeding, the Court takes judicial notice of information about the 2610 case that is available on Missouri's Case.net, "Missouri's online docketing system."  See Smith v. Satterfield, 1:19-CV-107-ACL, 2019 WL 4452282, at *2 (E.D. Mo. Sept. 17, 2019) (taking "judicial notice of the Missouri State Court record . . . as obtained through the public records published on Missouri Case.net"), aff'd, 19-3132, 2020 WL 1528180 (8th Cir. Jan. 8, 2020); Martin v. Cape Girardeau Cnty. Sheriff's Dep't, 1:17-CV-110-RLW, 2017 WL 5151351, at *3 n.1 (E.D. Mo. Nov. 3, 2017) (same), aff'd, 18-1120, 2018 WL 3491723 (8th Cir. June 13, 2018); see also S.E.C. v. Shanahan, 600 F. Supp. 2d 1054, 1058 (E.D. Mo. 2009) (taking judicial notice in a Securities Exchange Commission civil enforcement action "of the terms of" a plea agreement in the defendant's related federal criminal case).

charged Petitioner with robbery in the first degree in violation of Missouri Revised Statutes Section 569.020 (Count 1) and a related charge of armed criminal action in violation of Missouri Revised Statutes Section 571.015 (Count 2) for conduct Petitioner engaged in on May 14, 2011.[5]  In the 1541 case, the State charged Petitioner with six counts of robbery in the first degree in violation of Missouri Revised Statutes Section 569.020 (Counts 1, 3, 5, 7, 9, and 11), six related counts of armed criminal action in violation of Missouri Revised Statutes Section 571.015 (Counts 2, 4, 6, 8, 10, and 12) and one count of unlawful use of a weapon (by discharging a firearm at a dwelling) in violation of Missouri Revised Statutes Section 571.030 (Count 13) for conduct occurring on May 6, 2011 (Counts 1 through 4), May 7, 2011 (Counts 5 through 8), and May 15, 2011 (Counts 9 through 13).

Plea court proceedings

The 379 case was scheduled for a two-day jury trial beginning on March 2, 2015.[6]  On March 3, 2015, before trial concluded, Petitioner pleaded guilty to each offense charged in the 379 case and the 1541 case.[7]  The guilty pleas resulted from an agreement with the State.

In response to the plea court's questioning of Petitioner, who was placed under oath, Petitioner stated he was twenty-two years old, had completed junior year, could read and write, and had read and understood the "plea form" he had signed for each of the two cases.  He further

---

[5]  All statutory citations for the charged offenses are to the versions of the statutes in effect in May 2011, when Petitioner's offenses occurred.

[6]  See, e.g., Feb. 2, 2015, entry on the docket sheet for the 379 case, Legal File – Vol. 1, Resp't Ex. A, at 7 [ECF No. 14-1]; Plea Hr'g Tr. at 2, id. at 41 (plea court states at the start of the plea hearing, "we . . . – were in the middle of the trial") and id. at 55 (plea court states "we were in the middle of a trial on one of the case numbers" when explaining Petitioner's entitlement to a trial in lieu of a guilty plea).

[7]  See, e.g., Plea Hr'g Tr. at 2, Legal File – Vol. 1, Resp't Ex. A at 41 [ECF No. 14-1] (plea court states at the start of the plea hearing, "we . . . – were in the middle of the trial").

averred he had not recently taken and was not under the influence of any drugs, alcohol, medication, or controlled substance; and had no problems with his mental health.  After the plea court reviewed the charges, the prosecutor stated the evidence he would present with respect to each count in each case and Petitioner acknowledged (1) that his attorneys had explained to him the nature and elements of the pending charges, as well as "possible defenses" and (2) the prosecutor's statements regarding the evidence were "substantially true and correct."  Petitioner also stated under oath that no one had made any threats or promises to him to get him to plead guilty to the offenses.

Additionally, Petitioner acknowledged that he understood the range of punishment on all of the offenses as summarized by the prosecutor:  (1) from ten to thirty years or life imprisonment in the MoDOC for each of the seven first-degree robbery offenses, with Petitioner having "to serve a minimum of 85 percent of any such sentence"; (2) fifteen years in the MoDOC for the unlawful-use-of-a-weapon offense; and (3) from three years to an unspecified number of years in the MoDOC for each of the seven armed-criminal-action offenses, with Petitioner only eligible for parole after he served at least three years of the sentence imposed.  The State recommended terms of imprisonment of twenty-two years in the MoDOC on the first-degree robbery and armed-criminal-action offenses, to run concurrently with each other and with the sentence imposed in the City of St. Louis case (the 2610 case), plus fifteen years in the MoDOC on the unlawful-use-of-a-weapon charge, "concurrent with all counts in other cases."  Petitioner testified that he understood the State's recommendation, and again stated that no one had "made any promises or threats to [him] or to [his] family to induce [him] to plead guilty to the[] offenses."

Petitioner affirmed the plea court's statements that (1) he was entitled to the services of his attorneys throughout a trial and to a trial by a jury of twelve individuals, who would be instructed

that he is "presumed innocent" and that presumption "would stay with [him] throughout the trial until and if the jury found [him] guilty"; (2) the State would be required to prove his guilt beyond a reasonable doubt "and the jury would be so instructed"; (3) he had the right to testify or not, "as [he] ch[o]se," and no comment could be made about his failure to testify, if that is what he chose to do; (4) all twelve jurors "would have to agree as to [his] guilt or [he] would not be found guilty"; (5) the "State [was] required to produce in open court its witnesses against [Petitioner] and [Petitioner's] attorney would have the right to cross-examine those witnesses"; (6) he "could present evidence and witnesses in [his] defense if [he] so ch[o]se and . . . could have persons subpoenaed to testify on [his] behalf"; and (7) he "would have the right to appeal any guilty verdict."  When the plea court inquired whether Petitioner understood "that by pleading guilty . . . [he was] waiving or giving up all of those rights . . . and that there will not be a trial," Petitioner stated he understood and wanted to do that, and told the plea court he "waiv[ed] or g[a]v[e] up [his] right to a sentencing assessment report."

Before accepting Petitioner's guilty pleas, the plea court asked Petitioner a series of questions regarding his attorneys' representation, all of which Petitioner answered affirmatively. Through his responses, Petitioner stated that he had a sufficient opportunity to speak with his attorneys about the cases before deciding to plead guilty; that he had informed them of all the facts and circumstances surrounding the crimes with which he was charged; that he was satisfied that his attorneys were in possession of all the facts necessary to advise him; and that his attorneys adequately explained the nature and elements of, as well as any possible defenses to, the charged offenses.   Petitioner further testified that:  he had enough time to discuss his cases with his attorneys; he had no complaints or criticisms of his attorneys' representation; he did not know of anything they could have done but did not do for him; his attorneys answered his questions and

did everything he asked of them; his attorneys contacted witnesses he requested them to contact; he was completely satisfied with the extent to which his attorneys prepared and investigated his cases; he believed that he was fully advised by his attorneys as to all aspects of his cases, including his rights and possible consequences of his pleas; he believed his attorneys adequately, completely, and effectively represented him in defense of the charges; and he was satisfied with his attorneys' services.   When the plea court asked Petitioner if he had any questions for the court, Petitioner responded, "No."

Petitioner then pleaded guilty to each count in the 379 case and the 1541 case, acknowledging that he was freely and voluntarily pleading guilty because he was "guilty as charged on all counts." The plea court found Petitioner's guilty pleas "intelligently and voluntarily made with the full understanding of the charges and the consequences of his pleas, and with an understanding of his rights attendant to a jury trial and the effect of the pleas of guilty on those rights." Finding there was a factual basis for the pleas, the plea court accepted the pleas and found Petitioner guilty of each offense charged in the 379 case and the 1541 case.   The plea court sentenced Petitioner to a twenty-two-year term of imprisonment on each first-degree robbery offense and each armed criminal action offense, and to a fifteen-year term of imprisonment on the unlawful use of a weapon (for discharging a firearm at a dwelling) offense, with each sentence concurrent with the sentences on "all counts" and with the sentences in the other cases, including the 2610 case.

After the plea court sentenced Petitioner, Petitioner's counsel made "one additional request." Petitioner's counsel asked the plea court, "pursuant to [Missouri Revised Statutes] Section 558.031, as it[ is] interpreted by Dykes v. MoDOC, 325 S.W.3d 556 [(Mo. Ct. App. 2010)] and as it cites Mi[kel] v. McGuire 264 S.W.3d 689 [(Mo. Ct. App. 2008)]" to give Petitioner:

credit from May 17th of 2011 [the date of Petitioner's arrest in the 2610 case] to October 9th of 2013 [during] which [time Petitioner] was an inmate at the [City of] St. Louis . . . Justice Center.  He was returned to the [MoDOC] on October 9, 2013 [after he was sentenced in the 2610 case].

 … [W]e contend that under [Missouri Revised Statutes Section] 558.031 . . .  he is entitled to the credit of those approximately two and a half years by the [MoDOC] and we're asking the [plea court] to find that pursuant to [Section] 558.031 he [is]] entitled to the credit because he was detained and on warrant status in relation to this matter.

Plea Hr'g, Legal File, Vol. 1, Resp't Ex. A at 67-68 [ECF No. 14-1].  The prosecutor  responded that he did not object to Petitioner receiving any credit for time served that he was entitled to under the law, but he did object to Petitioner's receipt of any credit to which he was not entitled under the law.  The plea court ruled that Petitioner be given "appropriate credit" for "whatever time [he was] entitled to under Section 558.031."  Petitioner did not file an appeal from the convictions and judgments resulting from the guilty plea and sentencing proceeding.[8]

<u>Post-conviction motion court proceedings</u>

In his original <u>pro</u> <u>se</u> motion for post-conviction relief ("PCR") under Missouri Supreme Court Rule 24.035, Petitioner contended the MoDOC was denying him credit related to the 2610 case.  Through counsel, Petitioner filed an amended PCR motion, along with a request for an evidentiary hearing.

In his amended PCR motion, Petitioner alleged that his plea counsel provided ineffective assistance of counsel by "unreasonably informing" him that, "as a matter of law," he was entitled to and would receive credit against his sentence for the period from May 17, 2011, to October 9,

---

[8]  Federal constitutional claims are not properly raised in state court in a direct appeal from a guilty plea as "[i]t is well settled that in a direct appeal from a guilty plea, th[e Missouri appellate] court's review is restricted to the subject-matter jurisdiction of the trial court or the sufficiency of the information or indictment."  <u>State v. Goodues</u>, 277 S.W.3d 324, 326 (Mo. Ct. App. 2009); <u>accord</u> <u>State ex rel. Simmons v. White</u>, 866 S.W.2d 443, 446 n.4 (Mo. 1993) (en banc).  Likewise, an ineffective-assistance-of-counsel claim is not properly presented in a direct appeal to the Missouri Court of Appeals.  <u>See</u>, <u>e.g.</u>, Mo. S. Ct. Rule 24.035.

2013.[9]  Specifically, Petitioner claimed that his plea counsel "induc[ed Petitioner]'s unknowing, unintelligent, and involuntary plea[s] by informing [him], without qualification, that he was entitled to, and would receive, credit on both of his St. Louis County Cases for the period of time [he was in the City of St. Louis Justice Center] from May 17, 2011 to October 9, 2013." Petitioner asserted that he was prejudiced as a result of plea counsel's challenged conduct, for had he not received those assurances from plea counsel he would not have pleaded guilty but would have continued with trial in the 379 case and pursued trial in the 1541 case.

The post-conviction motion court denied Petitioner's PCR motion, without conducting an evidentiary hearing.  The court concluded the record refuted Petitioner's contention that his counsel informed him, as a matter of law, that he would be entitled to and would receive two and a half years of credit towards his sentence.  Rather, the post-conviction motion court concluded, the record of the plea and sentencing proceeding in the County cases (the 379 case and the 1541 case) directly contradicted the existence of such an unqualified statement by plea counsel. Specifically, the motion court found, plea counsel "made a <u>request</u>" for the credit, "<u>ask[ed]</u>" for the credit on two occasions, and "<u>contended</u>" that Petitioner was entitled to the credit.[10]  Therefore, the post-conviction motion court found, "the record reflects no guarantees and no assurances regarding credit for time served."  Furthermore, the post-conviction motion court explained,

> [p]lea counsel's use of petitionary language belies [Petitioner]'s claim of an unqualified assurance of credit for time served, because if such an unqualified assurance had been made, there would have been no point in <u>requesting</u> the same from th[e plea court], just as there would have been no point in <u>asking</u> the [plea court] to make a finding pursuant to [Section] 558.031.  Moreover, plea counsel's

---

[9]  In his amended motion for post-conviction relief, Petitioner alleges that, after he arrived at the Missouri Department of Corrections, he learned he would only receive credit for approximately six months of the two plus years of credit Petitioner had requested from the plea court.  Pet'r am. PCR mot., Legal File Volume 2, Resp't Ex. B. at 27 [ECF No. 14-2].

[10]  Post-conviction motion court's findings of fact, conclusions of law, and j., Legal File - Vol. 2, Resp't Ex. B, para. 22 [ECF No. 14-2] (emphasis in original).

use of the argumentative verb, <u>contend</u>, [when asking for the credit] only served to highlight, on the record, that the credit sought by [Petitioner] was most definitely <u>not</u> guaranteed by plea counsel, and that the question of the amount of credit to be granted was yet to be answered.

Post-conviction motion court's findings of fact, conclusions of law, and j., Legal File - Vol. 2, Resp't Ex. B, para. 23 [ECF No. 14-2] (emphasis in original).  The post-conviction motion court concluded:  (1) Petitioner "was not guaranteed any specific amount of credit for time served," (2) Petitioner "was not unreasonably advised by plea counsel," (3) no promises were made to induce Petitioner's pleas, (5) plea counsel "exercised the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances," and (6) Petitioner's pleas were "entered knowingly, intelligently, and voluntarily."  <u>Id.</u> para. 24.

Post-conviction appellate court proceedings

Petitioner presented one point in his post-conviction appeal.  Specifically, Petitioner argued that the motion court erred in denying, without an evidentiary hearing, his claim that his plea counsel violated his Fifth, Sixth, and Fourteenth Amendment rights to the effective assistance of counsel, to persist in his not-guilty pleas, to trial, and to due process by "inducing his involuntary and unintelligent guilty pleas by affirmatively misleading him to believe that he would 'as a matter of law' be entitled to jail-time credit [of] a period of approximately twenty-eight months."

The Missouri Court of Appeals for the Eastern District affirmed the motion court's judgment in an unpublished per curiam order accompanied by a memorandum sent to the parties setting forth the reasons for the order.  <u>Keys v. State</u>, No. ED104136 (Mo. Ct. App. Feb. 28, 2017), Resp't Ex. 7 [ECF No. 14-5].  The Court of Appeals stated the only ineffective-assistance-of-counsel claim that may be pursued after a person pleads guilty is one alleging "counsel's conduct affected the voluntariness and knowledge with which the plea was made.  <u>Harris v. State</u>, 494 S.W.3d 647, 649 (Mo. [Ct.] App. . . . 2016) (quoting <u>Nichols v. State</u>, 409 S.W.3d 566, 569 (Mo.

[Ct.] App. . . . 2013)).” <u>Keys</u>, No. ED104136, at 4.  For the second or prejudice requirement of an ineffective-assistance-of-counsel claim pursued by an individual who pleaded guilty, the Court of Appeals observed the person must show “that absent counsel’s errors, he would have insisted on proceeding to trial rather than pleading guilty.”  <u>Id.</u>  (citing <u>Harris</u>, 494 S.W.3d at 649).

Before addressing the ineffective-assistance-of-counsel claim the Court of Appeals recognized that “[m]istaken beliefs about sentencing may affect, to an extent, a[n individual]’s ability to knowingly enter a guilty plea” if the mistaken belief is reasonable.  <u>Id.</u> at 5 (citing <u>Harris</u>, 494 S.W.3d at 649-50).  Because during the plea proceeding Petitioner:  (1) twice affirmed “no threats or promises had been made to induce his guilty plea[s]”; (2) affirmed “he understood the range of punishment for his offenses, as well as the State’s recommendation for punishment”; (3) affirmed that “plea counsel did everything that [Petitioner] asked”; and (4) failed to disclose “that Plea Counsel advised him ‘without qualification’ that ‘as a matter of law’ [he] ‘was entitled to, and would receive, credit” for his time in the City of St. Louis Justice Center, the Court of Appeals concluded his “mistaken belief that he would receive a lesser sentence was unreasonable.”  <u>Id.</u> at 5.

The Court of Appeals also agreed with the post-conviction motion court that Petitioner’s ineffective-assistance-of-counsel claim was refuted by the record, that Petitioner’s counsel’s inquiry of the plea court after sentencing “undermines [Petitioner]’s claim of [an] ‘unqualified’ assurance of credit,” and the plea court’s response that Petitioner would receive whatever credit he was entitled to “did not reflect any guarantee or assurance regarding credit for time served.”  <u>Id.</u> Additionally, the Court of Appeals reasoned that:  (1)  any statement Petitioner’s counsel made that Petitioner was entitled to and would receive credit for jail time that Petitioner relied on to choose to plead guilty “is considered a promise made by Petitioner’s counsel and should have been

disclosed when [Petitioner was] asked whether any promises had been made to induce [Petitioner] to plead guilty"; and (2) "a mere prediction as to sentencing by counsel that proves incorrect is not sufficient to render a guilty plea involuntary."  Id. at 6 (citing Harris, 494 S.W.3d at 651).  The Court of Appeals issued its mandate on March 24, 2017.[11]

## II.  Ground for relief

In his amended habeas petition, Petitioner presents one ground:  that his pleas were unknowing and involuntary because his plea counsel provided ineffective assistance of counsel by informing him "on [the] record, that [he] was entitled to approximately two and a half years of credit [for the time he] was a[n] inmate at the [City of] St. Louis . . . Justice Center."  Citing to Strickland v. Washington, 466 U.S. 668 (1984), Respondent counters that the decisions of the state post-conviction motion court and the state appellate court rejecting the merits of Petitioner's ground for relief are (1) reasonable and (2) entitled to deference under 28 U.S.C. Section 2254(d) because there is support in the record for those decisions.

## III.  Discussion

A. Standard for habeas review

A prisoner in custody under the judgment and sentence of a state court may seek habeas relief on the grounds his custody violates the United States Constitution.  See 28 U.S.C. §§ 2241(c)(3), 2241(d).  When considering a state prisoner's habeas petition, a federal court is bound by the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), see 28 U.S.C. § 2254(d), to exercise "only limited and deferential review of underlying state court decisions."  Nash v. Russell, 807 F.3d 892, 897 (8th Cir. 2015) (internal quotation marks omitted) (quoting

---

[11] See the March 24, 2017, entry on the docket sheet for Keys v. State, Case No.  ED104136 (Mo. Ct. App. filed Mar. 14, 2016) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Mar. 28, 2021)).

Worthington v. Roper, 631 F.3d 487, 495 (8th Cir. 2011)).  A federal court may not grant habeas relief to a state prisoner unless a state court's adjudication of the merits of a claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000) ("Taylor").  If a state court's decision is not "contrary to" clearly established federal law, then the "unreasonableness" standard applies, which is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'"  Roper, 695 F.3d at 831 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular . . . case."  Taylor, 529 U.S. at 407-09; see also id. at 413.  The test of reasonableness is an objective one.  Id. at 409-10; accord White v. Woodall, 572 U.S. 415, 419 (2014).

The "clearly established Federal law" requirement of habeas review under Section 2254(d)(1) requires the habeas court to consider only United States Supreme Court precedent in force when a state court issues its decision.  Greene v. Fisher, 565 U.S. 34, 38-40 (2011) (relying on Cullen, supra); accord Taylor, 529 U.S. at 412.  State courts are not required to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts

them.'" Revels v. Sanders, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).  Importantly, when reviewing a matter under Section 2254(d)(1), a federal habeas court "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181-82.

The state court record is also significant when a federal habeas court analyzes under Section 2254(d)(2) whether a state court decision on the merits of a claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A federal habeas court "accord[s] the state . . . court substantial deference" and does not supersede the state court's factual determination if "reasonable minds reviewing the record might disagree about the finding in question." Brumfield v. Cain, 576 U.S. 305, 314 (2015) (internal quotation marks and citation omitted).  For purposes of Section 2254(d)(2), "a state-court factual determination is not unreasonable merely because [a] federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010).

Importantly, "a determination of a factual issue made by a State court [is] presumed to be correct" unless the habeas petitioner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The presumption of correctness applies to the factual determinations made by a state court at either the trial or appellate levels, Smulls v. Roper, 535 F.3d 853, 864-65 (8th Cir. 2008) (en banc), and to a state court's implicit findings of fact, Grass v. Reitz, 749 F.3d 738, 743 (8th Cir. 2014).  Likewise, federal habeas courts defer to state court credibility determinations, Smulls, 535 F.3d at 864, and to "[a] state court's findings of fact made in the course of deciding" an ineffective-assistance-of-counsel claim, Odem v. Hopkins, 382 F.3d 846, 849 (8th Cir. 2004).

Although the Supreme Court has not yet clarified the relationship between the "unreasonable" provision of Section 2254(d)(2) and the "presumed correct" provision of Section

2254(e)(1), see, e.g., Burt v. Titlow, 571 U.S. 12, 18 (2013); Velez v. Clarinda Corr. Facility, 791 F.3d 831, 834 n.1 (8th Cir. 2015) (citing Brumfield, 576 U.S. at 322), Eighth Circuit authority supports the granting of habeas relief  under Section 2254(d)(2) when a petitioner provides "clear and convincing evidence that the state court's presumptively correct factual finding [that is material to its decision on the merits] lacks evidentiary support.  28 U.S.C. § 2254(e)(1)."  Trussell v. Bowersox, 447 F.3d 588, 591 (8th Cir. 2006); accord Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.  28 U.S.C. § 2254(e)(1)").  Put another way, a petitioner is entitled to relief under the AEDPA if the state court decision "at issue is based on factual determinations that could not reasonably be derived from the state court evidentiary record."  Velez, 791 F.3d at 834.

B. Ineffective assistance of plea counsel

The Sixth Amendment's guarantee of counsel is applicable to the States through the Fourteenth Amendment because it is a fundamental right and essential to a fair trial.  Gideon v. Wainwright, 372 U.S. 335, 342-45 (1963).  To establish an ineffective-assistance-of-counsel claim, Strickland requires a showing by a petitioner that:  (1) "counsel's performance was deficient," i.e., that "counsel's representation fell below an objective standard of reasonableness" under all the circumstances ("performance prong") and (2) "the deficient performance prejudiced the defense" ("prejudice prong").  Strickland, 466 U.S. at 687, 688.  A court need not address both prongs of the Strickland test if it finds the habeas petitioner has not established one of the prongs. Strickland, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on

one"); accord Osborne v. Purkett, 411 F.3d 911, 918 (8th Cir. 2005) (stating the petitioner "did not satisfy the performance [prong of the Strickland test so the court] need not consider the prejudice" prong); Odem, 382 F.3d at 851 (stating "[i]t is not necessary for [a court] to consider the prejudice [prong] of the Strickland analysis" after concluding the petitioner did not satisfy the performance prong).

When a criminal case is resolved by a guilty plea instead of a trial, the Constitution requires that the plea be made knowingly, intelligently and voluntarily, with knowledge of "the relevant circumstances and likely consequences," because it constitutes a waiver of a defendant's right to a trial, right to confront accusers, and privilege against self-incrimination. United States v. Brady, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). "The entry of a guilty plea . . . ranks as a 'critical stage' at which the right to counsel adheres." Iowa v. Tovar, 541 U.S. 77, 81 (2004). A plea is intelligently and knowingly made when it follows advice by competent counsel, a defendant is made aware of the nature of the charges against him, and nothing shows a defendant is "incompetent or otherwise not in control of his mental faculties." Brady, 397 U.S. at 756. A defendant "who pleads guilty upon advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann[ v. Richardson, 397 U.S. 759 (1970)],'" or was not within the range of competence demanded of attorneys in criminal cases. Hill v. Lockhart, 474 U.S. 52, 56-57 (1985) (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)).

Strickland's two-pronged test "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill, 474 U.S. at 58. To prevail, a habeas petitioner must show that his counsel's performance was deficient, i.e., fell below an objective standard of reasonableness, and

that there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial.  Id. at 57-59.

As the Supreme Court has explained, under the AEDPA "[t]he pivotal question" for a federal habeas court reviewing an ineffective-assistance-of-counsel claim that was subject to state court review on the merits, "is whether the state court's application of the Strickland standard was unreasonable."  Harrington, 562 U.S. at 101.  "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is . . . difficult."  Id. at 105.  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Id. (internal citations omitted).  Specifically, after a state court reviews the merits of an ineffective-assistance-of-counsel claim, it is not sufficient for a federal habeas petitioner to "show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance."  Bell v. Cone, 535 U.S. 685, 698–99 (2002).  Instead, a federal habeas court "assess[es] the state courts' assessment of counsel's performance."  Barnes v. Hammer, 765 F.3d 810, 814 (8th Cir. 2014).  Put another way, a federal habeas court views the ineffective-assistance-of-counsel claim through two filters:  first, the court defers to the judgments of trial counsel under Strickland, 466 U.S. at 689, and second, the court "defer[s] to the state courts' application of federal law to the facts of the case."  Shelton v. Mapes, 821 F.3d 941, 946 (8th Cir. 2016) (cleaned up).

A federal habeas petitioner "must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 699.  "A state-court decision is 'unreasonable' within the meaning of § 2254(d) only when it is 'so lacking in justification that there [is] an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement.'"   Daniels v. Kelley, 881 F.3d 607, 611 (8th Cir. 2018) (quoting Harrington, 562 U.S. at 103) (alteration in original).

Reviewed under the doubly deferential standard applicable to federal habeas review of ineffective-assistance-of-counsel claims, the Missouri Court of Appeals' finding that counsel was not ineffective is not contrary to clearly established federal law.  That the Court of Appeals did not mention either the Strickland or the Hill cases, or other United States Supreme Court decisions addressing the ineffective assistance of counsel with respect to a guilty plea, is not significant because the Court of Appeals decision does not contradict the reasoning or result of the relevant Supreme Court decisions.  Furthermore, although the Court of Appeals' decision did not address Strickland's and Hill's prejudice prong applicable to the analysis of an ineffective-assistance-of-counsel claim, this does not conflict with federal law.  To the contrary, a claim of ineffective assistance of counsel can be denied for a failure to meet either of the two prongs.  Strickland, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one"); accord Osborne, 411 F.3d at 918 (stating the petitioner "did not satisfy the performance [prong of the Strickland test so the court] need not consider the prejudice" prong).

Additionally, this Court has neither been directed to nor found a Supreme Court case addressing either prong of the Strickland test, as adopted in Hill, in the context of an attorney allegedly providing a defendant, prior to a guilty plea, advice regarding jail-time credit toward a term of imprisonment, much less such advice for a period of jail time served in a separate case as presented here.  In the absence of "any clearly established holding" addressing an ineffective-assistance-of-counsel claim based on such advice, the Court concludes the Missouri Court of Appeals' decision regarding this claim was not contrary to clearly established federal law.  See

Woods v. Donald, 575 U.S. 312, 317 (2015) (per curiam) (because none of the Supreme Court's "cases confront 'the specific question presented by this case'" – the trial attorney's absence from the courtroom during approximately ten minutes of prosecution testimony about other defendants – the state court's decision on direct appeal rejecting the petitioner's Sixth Amendment right to effective-assistance-of-counsel claim was not "'contrary to' any holding from th[e Supreme] Court").

Nor can it be said that the Missouri Court of Appeals unreasonably applied clearly established Federal law by finding that Petitioner's counsel's performance was not deficient. Based on Petitioner's counsel's colloquy with the plea court after Petitioner's sentencing, it is reasonable to conclude, contrary to Petitioner's claim, that counsel did not unequivocally advise or assure Petitioner prior to his pleas that he would receive a credit on any term of imprisonment imposed in the County cases (the 379 and 1541 cases) of approximately twenty-eight months for the time he spent in the City of St. Louis Justice Center prior to sentencing in the City case (the 2610 case).  Nor does the record of the plea and sentencing proceeding in the County cases disclose any assurance or guarantee by Petitioner's counsel during the proceeding that Petitioner would receive a credit for his jail time in the City case with respect to any term of imprisonment imposed. See United States v. Has No Horses, 261 F.3d 744, 749 (8th Cir. 2001) (rejecting a claim that erroneous advice by counsel about an expected sentence entitled the defendant to set aside his guilty plea, based on the defendant's testimony during the plea proceeding); United States v. McKnight, 186 F.3d 867, 869 (8th Cir. 1999) (per curiam) (rejecting a claim that a defendant was misled about the length of his sentence based on the plea agreement and colloquy which showed the defendant knew he faced a greater sentence, and finding the defendant's hope of a lesser sentence did "not translate into a claim for relief"); Premachandra v. United States, 101 F.3d 68,

69 (8th Cir. 1996) (rejecting a habeas claim that a guilty plea was not voluntary because counsel had incorrectly informed the petitioner that he would not serve a lengthy prison term if he pleaded guilty because, at the guilty plea hearing, the petitioner expressly acknowledged, among other things, the potential sentence he faced).

Furthermore, the record supports the State court's findings of fact, which are entitled to a presumption of correctness because Petitioner has not introduced any evidence to rebut the presumption by clear and convincing evidence.  During the plea hearing, Petitioner expressed satisfaction with his counsel, stated no promise had been made to induce him to plead guilty, acknowledged the range of punishment on each count as disclosed by the prosecutor, confirmed his understanding of the term of imprisonment recommended by the State, and did not ask the plea court any question, much less a question about jail-time credit, when the plea court gave him the opportunity.  Importantly, "[s]olemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 74 (1977).  Therefore, "while a guilty plea taken in open court is subject to collateral attack, 'the defendant's representations during the plea-taking carry a strong presumption of verity and pose a "formidable barrier in any subsequent collateral proceedings."'"  Bramlett v. Lockhart, 876 F.2d 644, 648 (8th Cir. 1989) (quoting Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985)).  Nothing of record challenges the truthfulness of any of Petitioner's statements during the plea proceeding or the propriety of counsel's statements to the plea court regarding the request for jail-time credit.  Petitioner has not established that his counsel's performance fell below an objective standard of reasonableness.

The record supports no finding that hoped-for jail time credit induced Petitioner's guilty pleas much less that counsel misinformed Petitioner about such credit either before or during the plea proceeding.   The determination of the Court of Appeals that counsel's performance was not

deficient or ineffective and that Petitioner's pleas were knowing and voluntary (1) is not contrary to or an unreasonable application of clearly established federal law, and (2) is not based on an unreasonable determination of the facts in light of the evidence.  Ground one is denied.[12]

## IV. Certificate of appealability

A final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court cannot be appealed unless the judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1).  A judge may issue a COA under Section 2253(c) only if a petitioner has made "a substantial showing of the denial of a constitutional right."  Tennard v. Dretke, 542 U.S. 274, 282 (2004); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  This standard requires a petitioner to demonstrate, with respect to claims resolved on the merits, that "reasonable jurists would find the . . . court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); accord Miller-El, 537 U.S. at 338 (quoting Slack, 529 U.S. at 484).

The Court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right.  Accordingly, the Court will not issue a certificate of appealability with respect to any aspect of the denial of Petitioner's amended petition.

## V. Conclusion

After careful consideration,

---

[12]   Because, to resolve Petitioner's ineffective-assistance-of-counsel claim, this Court is not deciding whether a state jail-time crediting statute requires giving Petitioner credit for the time he was detained in the City of St. Louis Justice Center, this Court may resolve Petitioner's sole claim on the merits.  Cf. Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (reversing the grant of a federal habeas petition in part because, to resolve the petitioner's contention that his right to due process was violated when the trial court, which lacked jurisdiction, sentenced him, the federal habeas court would have to resolve whether the trial court had jurisdiction, a question not properly before a federal habeas court because it involved solely a matter of state law); Travis v. Lockhart, 925 F.2d 1095, 1097 (8th Cir. 1991) (vacating the denial of a habeas petition in which the petitioner sought jail-time credit and remanding to the district court for dismissal of the petition upon concluding "the interpretation of state crediting statutes is a matter of state concern and not a proper function of a federal court under its habeas corpus jurisdiction").

**IT IS HEREBY ORDERED** that Petitioner's amended Petition for Writ of Habeas Corpus [ECF No. 7] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a Certificate of Appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.


_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March 2021